[Civ. No. 4574. Third Appellate District.—October 28, 1932.]

THE CITY OF BEVERLY HILLS (a Municipal Corporation), Respondent, v. ARTHUR ANGER et al., Defendants; PETRA P. HARDWICK et al., Appellants.

224

J. Wiseman MacDonald and Walter T. Casey for Appellants.

Richard C. Waltz and Hill, Morgan & Bledsoe for Respondent.

THOMPSON (R. L.), J.—This is an appeal on the part of certain defendants from an interlocutory decree of condemnation of a strip of land consisting of thirty-two lots adjacent to the northerly border of Santa Monica Boulevard in the City of Beverly Hills, to be used as a public park.

The appellants contend the awards are grossly inadequate to conpensate them for the values of the condemned properties, and that the court erred in the admission of evidence respecting the market value of these lots. The chief attack is directed toward the admission in evidence of a zoning ordinance which restricts the use of these lots to the construction of one-family dwelling-houses.

The City of Beverly Hills is a thriving municipal corporation. Santa Monica Boulevard intersects the city in an easterly and westerly direction. The industrial and business portion of the city is situated south of this avenue. In 1922 the city adopted a zoning ordinance restricting that portion which lies north of Santa Monica Boulevard as an exclusive residential district, with the exception of certain schools and churches which were sanctioned therein. An electric street-car line traverses this boulevard. The respondent City of Beverly Hills brought suit to condemn for use as a public park the entire tier of lots adjacent to the northerly side of Santa Monica Boulevard and extending from its intersection with Doheny Drive westerly to its intersection

with Wilshire Boulevard and up the last-mentioned street to Benedict Canyon Drive, excepting therefrom four blocks of lots located near the center of this strip of land between Crescent Drive and Camden Drive. The condemned tract of land consists of thirty-two lots, among which are included three parcels belonging to the appellants. The three lots which were owned by the appellants are designated as tracts numbered 26, 27 and 28. Several competent witnesses testified that the values of these lots at the time of the commencement of this action ranged from $8,400 to $32,500 apiece. The court found that tract number 26 was worth $9,714, and that the other two tracts were each worth the sum of $9,240. Judgment was rendered accordingly. From this judgment the owners of these three lots have appealed.

While a judgment for damages which is rendered in a condemnation proceeding may be set aside on the ground that it is grossly inadequate to compensate the owner for the value of the property, this may not be done when there is substantial evidence to support the judgment unless it clearly appears that the award is the result of passion or prejudice on the part of the jury, or that the award clearly indicates an abuse of discretion on the part of the trial judge. (20 Cal. Jur. 104, sec. 67; *Phillips* v. *Lyon*, 109 Cal. App. 264 [292 Pac. 711].) In the present case there is ample evidence to support the awards which were made to the respective appellants. There is no evidence of an abuse of discretion on the part of the trial judge in ascertaining and fixing these awards. The record on appeal is devoid of evidence upon which this court is warranted in reversing the judgment on the ground of inadequacy of the awards.

It is contended the court erred in admitting in evidence the zoning ordinance of the City of Beverly Hills for the reason that the market value of the land, for condemnation purposes, may not be confined to the mere restricted use to which it is limited by the terms of the ordinance. It is asserted the city may not take advantage in condemnation proceedings of the decreased valuation of lots which is caused by the enacting of a zoning ordinance, but upon the contrary, that the market value should be estimated on the basis of any reasonable use to which the land may be adapted.

The zoning ordinance was properly admitted in evidence. It tends to show conditions and restrictions actually affecting the use of the property. Even though these restrictions are for a limited period of time, and may be waived or rescinded, still, they do affect the temporary use and market value of the property. Some witnesses testified they took into consideration the possibility that the restrictions might be waived or rescinded. The cross-examination of witnesses was unlimited in that regard. The use to which property may be devoted has a direct bearing upon its market value. In determining the market value of real property all circumstances and conditions which become either an advantage or a detriment to the property should be considered. We are pointed to no evidence in the present record indicating that the restricting of the use of lots to the construction of dwelling-houses for single families has the effect of depreciating the value of the property. These very restrictions tend to create and preserve exclusive residential districts free from objectionable industries and business enterprises. The value of property in such restricted districts is frequently increased rather than diminished. ■ In the absence of evidence to the contrary a court may not assume that the market value of real property is decreased merely because it is affected by the limitations of its use as provided by a zoning ordinance. The question as to whether a zoning ordinance has the effect of increasing or reducing the value of land included within its provisions is one of fact to be established by evidence. Regardless of whether the value of real property is increased or diminished as a result of the application of a zoning ordinance, the ordinance is competent evidence to be considered in a suit for condemnation of property located within the district which is affected thereby, for the purpose of determining the actual market value thereof. The ordinance is competent evidence for or against the city which enacted it, when the municipality is a party to the condemnation proceeding. Zoning ordinances are uniformly sustained as valid exercise of the police powers of a municipality. ■ The enacting of a zoning ordinance which is adopted by a city in good faith and which actually does affect the market value of real property is nevertheless competent evidence in behalf of the city in a subsequent suit for condemnation of the property for

public use. The city is not estopped from proving the actual market value of the property merely because its enforcement of police regulations may have affected the value of the property. ██ Nor is the city estopped from condemning the property for public park purposes because the zoning ordinance failed to specifically authorize the use of property within the restricted district for that particular purpose. The ordinance, however, does authorize the use of land within the restricted district for the purpose of "public playground". This is comprehensive enough to include public parks. The zoning ordinance reads in part:

"Section 3. Zone 'A'. Residential. Except in this ordinance otherwise provided, no building, structure or improvement shall be erected, constructed, established, altered or enlarged in Zone A upon any lot, or parcel of land which is designed, arranged or intended to be used or occupied for any other purpose other than a church, public school, public library, *public playground, . . .* "

██ The appellants may not question the finding of the court that "public interest, convenience and necessity require the acquisition" of these lots by the City of Beverly Hills for use as a public park.

██ In ascertaining the market value of real property any evidence which tends to show the physical condition of the property, the purpose for which it is employed, or any reasonable use for which it may be adapted, is competent.

In 22 C. J. 177, section 118, it is said: "The location and physical condition of real estate, and the use to which it is put may be placed before the jury, and evidence is admissible to show any probable use to which the land could reasonably be put. . . . In general any elements of value not merely speculative may be shown. On the other hand, it is permissible to show any elements legitimately tending to depreciate intrinsic value, such as flaws in the title, *restrictions on the use of the premises, . . .* "

In 2 Lewis on Eminent Domain, second edition, 1052, section 479, it is said: "The proper inquiry is, what is its market value in view of any use to which it may be applied and of all the uses to which it is adapted."

In the case of *Los Angeles City H. S. Dist. v. Hyatt,* 79 Cal. App. 270 [249 Pac. 221, 222], a zoning ordinance was admitted in evidence without objection. On appeal it was

insisted this ordinance caused the owners of the land to suffer "an unjust handicap . . . in fixing the award. of damages". The court said: "There might be many considerations which if removed would enhance the value of real property, but when they exist they should be observed. It was the duty of the trial court to consider all conditions having any bearing upon valuations."

Regarding the rule with respect to a consideration of all circumstances and conditions which may reasonably affect the market value of real property, the court said in *Spring Valley Water Works* v. *Drinkhouse*, 92 Cal. 528, 533 [28 Pac. 681, 683] : "The rule is, that the owner is entitled to the market value of his land, to be determined in view of all the facts which would naturally affect its value. . . . 'Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers may be considered.' "

It has been held the owners of lots in a subdivision of a city which is included in a district subject to residential building restrictions have an easement in all of the lots of that district entitling them to insist upon the fulfillment of the restrictive conditions, and that the ignoring of the terms of such restrictions in assessing damages in proceedings in eminent domain is erroneous. (*Peters* v. *Buckner*, 288 Mo. 618 [232 S. W. 1024, 17 A. L. R. 543].) The admission of the zoning ordinance in the present case was therefore not erroneous.

■ The appellants contend the court erred in admitting in evidence certain deeds to lots within the subdivision in which their land is situated, which deeds contain building restrictions similar to those contained in the zoning ordinance, limiting the use to the construction of single family dwelling-houses to cost not less than a specified sum. It was stipulated that: "Each and every deed constitutes a separate and distinct contract between the original purchaser and the Rodeo Land & Water Company, in which no one else shares or has an interest. . . . They give no right to any other owner in the same tract to enjoin any violation of them. . . . The Rodeo Land & Water Company (is) the only one that can force a forfeiture." The Rodeo Land & Water Company was a party defendant in the present condemnation proceeding, but failed to appeal from the judg-

ment. It is asserted by these appellants that the restrictions created a reversionary interest in the land in favor of the Rodeo Company and a right to declare a forfeiture of title for failure to fulfill the restrictive provisions of the deeds. The court found that the Rodeo Company owned a reversionary right in these lots subject to forfeiture for failure to fulfill the covenant, but that the grantor "has no interest or right in any of said parcels of *any value*". The appellants contend this finding that the reversionary rights are without value, is not supported by evidence.

There is no merit in this contention. There is no evidence that any deeds to lots were received in evidence, with the exception of those affecting the strip of land which is involved in the condemnation proceeding. Even if deeds to lots which were not included in the condemned strip were received in evidence, they were harmless. It was stipulated that no one except the Rodeo Company could complain of a failure to fulfill the restrictive provisions of the deeds. No such forfeiture ever did occur. There is no evidence that a forfeiture is likely to occur. Even if a failure to fulfill the restrictive terms of the deeds should occur entitling the grantor to declare a forfeiture, still the same restrictions were included in the zoning ordinance and could be enforced as a violation of that ordinance. The Rodeo Company is not complaining of the introduction of the deeds or the failure to allow damages to it on account of the asserted reversionary interest. Those interests are speculative and uncertain. Even though the court did determine without evidence that these reversionary interests were valueless to the Rodeo Company, that finding is harmless to the appellants. If the reversionary interests added any value to the land of these appellants, it must be assumed the court included that element of value in its award to them. The appellants, however, assert that the reversionary interests were without value. In that event the appellants may not complain of a finding which is harmless to them. The acceptance in evidence of these deeds was neither prejudicial nor erroneous.

There was no error in permitting the plaintiff on cross-examination to ask defendants' witnesses if they did not have knowledge of prices recently paid for property in the immediate vicinity, but not included in the condemned

strip of land. These questions were competent as affecting the qualifications of the expert witnesses. (*East Bay Municipal Utility Dist.* v. *Kieffer*, 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178]; 10 Cal. Jur. 364, sec. 70.) ▇ It was also harmless to permit certain witnesses to testify to the value of the lots without including in their estimation the possible future removal of restrictions in their use. There is no satisfactory evidence of the probability of the removal of these restrictions. It appears to be speculative to assume that a change in the provisions of the zoning ordinance is likely to occur. That possibility was an issue in the case. It must be assumed the court, sitting without a jury, took into consideration all such possibilities in rendering its award.

The appellants appear to have secured a fair award of damages for the condemnation of their lots. The record discloses no reversible error.

The judgment is affirmed, appellants to recover costs.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 26, 1932.