[Civ. No. 416. Fifth Dist. Dec. 30, 1964.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. GEORGE L. GRAZIADIO, JR., Defendant and Appellant.

526

Thomas G. Baggot for Defendant and Appellant.

Harry S. Fenton, R. B. Pegram, William H. Peterson and Robert W. Vidor for Plaintiff and Respondent.

STONE, J.—This is an appeal from a judgment in condemnation for the value of property taken for highway purposes, and a denial of severance damages. Defendant was the owner of 9.503 acres in the City of Fullerton, of which plaintiff took 5.614 acres for highway purposes. For some time prior to the taking the entire property had been zoned "R-1"

although all but the westerly 1.23 acres had been marked as potential ''C-1.''

Appellant submitted a ''precise plan'' for the development of the property and requested a change in zoning to C-1. The prospects for such zoning appeared favorable as the area had become extensively developed, partly by reason of the location there of the Orange County State College.

The Department of Public Works, Division of Highways, had been authorized to lay out and construct a state highway route in the area, but the exact location was unknown. During the time defendant's application for rezoning from R-1 to C-1 was being processed, the Department of Public Works notified the City of Fullerton that the highway route had been adopted and that it included a portion of defendant's property, and concluded with a request that the city leave the zoning of the parcel to be taken, R-1. The Planning Commission report to the city council noted this communication and recommended that parcel 1, to be taken for highway purposes, be permanently zoned R-1 and the remainder of the parcel rezoned C-1. The city council incorporated the recommendation in a zoning ordinance.

Defendant's expert witness testified the highest and best use of the property was commercial—shopping center, and placed a value of $168,000 on the parcel taken. Defendant himself testified his property's highest and best use was commercial—neighborhood shopping center, and placed a value on the parcel taken of $196,350. Plaintiff's expert witness testified the highest and best use for the property was residential—income, and valued it at $157,500. The jury brought in a verdict of $158,000.

Defendant asserts the judgment must be reversed because (a) the court refused to admit in evidence the communication from the Department of Public Works to the City Council of the City of Fullerton, requesting that the property taken remain zoned R-1; (b) the court refused to permit defendant to bring out by cross-examination a statement by the senior right-of-way agent of the Division of Highways that the reasonable value of the property is $168,000; and (c) plaintiff's counsel committed prejudicial misconduct by arguing to the jury, ''I submit that if you are going to spend your own money, . . .''

█ We take up, first, the court's order denying admission in evidence of the communication from the Department of Public Works to the City of Fullerton during the pendency

of defendant's application to rezone the property. The communication informed the city that the property lay in the path of the freeway, and concluded: "It is the considered position of this Department that any change in the zoning of the subject property required for the right of way of this State freeway will be inimical to the best interest of the public without a corresponding benefit to the private owners. It would provide additional administrative difficulties for both this Department and the property owners."

Thereafter the city rezoned to "C-1, limited commercial," the parcel remaining after the taking, but left the parcel plaintiff advised it would take zoned "R-1, single family residential."

The R-1 zoning was properly admitted in evidence since it has a bearing upon the possible uses of the property, which in turn has a bearing upon the issue of market value. (*City of Beverly Hills* v. *Anger*, 127 Cal.App. 223, 227 [15 P.2d 867].) By the same reasoning, the communication from the Department of Public Works, the plaintiff herein, requesting the R-1 zoning, is relevant since it, too, bears upon the possible uses of the property had there been no taking for highway purposes. The jury was instructed that "In deciding upon the fair market value of the property taken, you must view and consider the Graziadio property just as though there was no taking for highway purposes."

Certainly had there been no taking, there would have been no communication from the Department of Public Works affecting the zoning. Thus, to the extent that the communication from plaintiff Department of Public Works affected the R-1 zoning ordinance that was received in evidence, the communication was relevant and admissible. ■ In *People* v. *Jones*, 42 Cal.2d 219, at page 222 [266 P.2d 38], the Supreme Court, in discussing relevant and admissible evidence, said: " 'All facts having rational probative value are admissible, unless some specific rule forbids.' (1 Wigmore on Evidence (3rd ed. 1940) § 10, p. 293; and cf. Code Civ. Proc., § 1868.) The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue."

Under this test, the communication was clearly relevant to the issue of property use as affecting market value.

■ Taking a slightly different approach, although basically applying the same reasoning, we find the evidence admissible

upon the issue of the probability of a future zoning change of the property taken. In *People* ex rel. *Dept. of Public Works* v. *Donovan*, 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1], the Supreme Court held that "Where there is a reasonable probability that zoning restrictions will be altered in the near future, the jury should consider not only those uses currently permitted, but also other uses to which the property could be devoted in the event of such a change."

If the R-1 zoning resulted from respondent's communication to the city council, it is "a reasonable probability" that absent the highway taking, the parcel would have been zoned C-1 as was the parcel remaining after the taking, particularly since the remaining parcel was less suitable for commercial development than the parcel taken which fronted on two public streets.

Plaintiff argues that the validity of a zoning ordinance cannot be challenged by the landowner in a condemnation action since this amounts to a collateral attack upon the action of a legislative body. The communication, however, was not offered to prove the invalidity of the ordinance but, rather, to prove that the ordinance which was admitted in evidence against defendant was enacted in contemplation of the taking for highway purposes. If property to be taken is to be valued by the jury "just as though there was no taking for highway purposes," certainly the landowner must be permitted to introduce evidence tending to show that the zoning was predicated upon the taking. Since the parcel taken fronted on two streets and was more favorably situated for commercial development than the remaining parcel, the only rational inference to be drawn from the different treatment of the contiguous parcels is that it was affected to some extent by the communication from plaintiff advising of the prospective taking with a request for R-1 zoning.

Plaintiff contends, also, the evidence was inadmissible upon the ground that it was speculative. To a degree it is, in that there is no way of telling with certainty what effect the communication had upon the mind of each member of the Planning Commission or each member of the city council. But evidence of this character is not unusual in the law; traditionally, the courts have determined intent, motive and like matters of the mind from circumstantial evidence. At any rate, certainty is not the test of the admissibility of evidence of this kind. The test is whether the inferences which it is alleged may be drawn from proffered evidence might be drawn

by a reasonable mind and whether it is relevant to the issues to be determined by the jury. Although when stated as an abstract rule it may seem somewhat nebulous, it can be applied, nevertheless, with satisfactory practicality to the facts of a particular case. Here the peculiar facts are that the parcel most suitable for commercial development was zoned R-1 while the remainder was zoned C-1, with no apparent explanation except the notice from plaintiff Department of Public Works to the city that the R-1 parcel was to be taken, including the request that the parcel remain zoned R-1. If, under these circumstances, we were to hold the communication inadmissible as being too speculative, we would set a standard so exacting that it could rarely be met by circumstantial evidence.

Since we have concluded that the proffered evidence was admissible, the question is narrowed to whether the error in excluding the communication from the consideration of the jury constituted prejudicial error. We note, first, that the city's file covering the zoning ordinance and its history was received in evidence. Although the exhibit does not contain a copy of the communication from the Department of Public Works to the City of Fullerton, it does reflect that while defendant's application for rezoning of the entire parcel to C-1 was pending, a communication was received from the Department of Public Works designating the location of the highway. It further reflects that after receiving such information the planning commission recommended no change in R-1 zoning for the parcel to be taken, and that the parcel left after taking be rezoned C-1; that the zoning ordinance thereafter adopted by the city followed this recommendation.

As the ordinance and its legislative history were admitted in evidence, it is not clear why the communication from the Department of Public Works, referred to in the exhibit, was excluded from evidence. In any event, the city's file placed in evidence information that permitted defendant to argue to the jury that the zoning ordinance was the result, at least in part, of a communication from the Department of Public Works. Furthermore, defendant's expert witnesses were permitted to testify that there was a reasonable probability that the zoning restrictions on the parcel taken would be changed from R-1 to C-1. These experts and defendant himself testified to the jury about the value of the property taken, on the basis

of its possible and likely commercial development, that is, property with C-1 zoning.

In the light of the evidence that was before the jury, it does not appear reasonably probable that a result more favorable to defendant would have been reached had the communication been received in evidence. Therefore we conclude the error was not prejudicial. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]; *Murphy* v. *Atchison, Topeka & Santa Fe Ry.*, 162 Cal.App.2d 818, 823 [329 P.2d 75]; Witkin, Cal. Procedure, 1963 Supp. § 107, p. 757.)

■ Next, we turn to defendant's contention that the court erred by not permitting defendant to call the senior right-of-way agent of the Division of Highways, under Code of Civil Procedure section 2055, to prove an admission of value alleged to have been made during a telephone conversation between defendant's counsel and the agent.

It is not disputed that the amount of $168,000 was offered by plaintiff's agent to defendant's attorney in the settlement discussion. Defendant attempted to show by interrogation of the agent, in chambers, that the figure represented the agent's estimate of the market value of the property, an independent fact statement. ■ Although made in connection with an offer of settlement, a statement of value made as an assertion of fact is admissible in evidence, under the rationale of *People* ex rel. *Department of Public Works* v. *Forster*, 58 Cal.2d 257, 263-267 [23 Cal.Rptr. 582, 373 P.2d 630]. ■ Plaintiff contended that the amount was mentioned, not as an expression of market value, but as the consideration for settlement of the entire lawsuit, including defendant's claim for severance damages to the parcel remaining after the taking. The agent denied ever stating that $168,000 was, in his opinion, the fair market value of the property.

On this point, the court apparently accepted the testimony of the agent and ruled that the substance of the conversation was an offer of compromise and settlement of the case, and that the amount of the offer, $168,000, was not an independent statement of value. Accordingly, the court, pursuant to Code of Civil Procedure section 2078, sustained plaintiff's objection to the offer of proof. It was proper for the trial judge, outside the presence of the jury, to determine the preliminary questions of fact upon which the admissibility of the evidence depended. (*People* ex rel. *Dept. of Public Works* v. *Forster, supra*, p. 260; Code Civ. Proc. § 2102; Witkin, Cal. Evidence (1958) p. 620.)

Consequently the question comes to us, not as a question of law, but one of fact, that is, whether the statement of value was just that, an independent statement, or, indeed, a compromise not predicated upon or confined to the market value of the property taken. ■ Since the trial court is no less the arbiter of the credibility of witnesses in a preliminary determination of whether proffered evidence is admissible, than in any other instance of fact determination within its jurisdiction, we are bound by the finding of the trial court. (*La Jolla Casa deManana* v. *Hopkins,* 98 Cal.App.2d 339, 345 [219 P.2d 871].)

■ We turn to defendant's final contention, that plaintiff's counsel committed prejudicial misconduct during argument. Of the instances of alleged error cited, the only impropriety we note is counsel's remark to the jury: "I submit that if you are going to spend your own money, a hundred thousand dollars —." To this argument defendant made timely objection. Clearly, counsel was asking each juror to identify himself with the plaintiff, a party to the action. To the objection the court ruled: "As a demonstration or example, I think there is no impropriety in it. Obviously we are concerned with the rules concerning the matter of market value which will be explained to the jury, but this is, I presume, an example."

The statement, however, urged each juror to view the case from a personal point of view as a taxpayer. In *People* v. *Loop,* 127 Cal.App.2d 786, at page 805 [274 P.2d 885], the court criticized an instruction which appears to us less prejudicial than plaintiff's argument here. In *Loop* the jury was instructed that: " '. . . the term "just compensation" means "just" not only to the defendants whose property is taken for a public use, but also "just" to the public which is to pay for it. In this connection, you are further instructed that it would be unjust to the public that the plaintiff, the People of the State of California, should be required to pay the defendants more than a fair compensation for the loss sustained by the appropriation of their property for the general good.' "

The court observed: "Such instructions come too close to arousing the minds of jurors to their own interests as taxpayers and members of the public for whose 'general good' the property is being taken. Such instructions serve no good purpose."

The same reasoning applies here to counsel's argument, the

vice being the appeal to self-interest, which violates the fundamental concept of an objective trial by an impartial jury.

Having concluded that the argument constituted error, we must again weigh the gravity of the error in relation to the trial viewed in its entirety, that is, whether it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People* v. *Watson, supra.*) We cannot say that it would, since the last thing the court did before sending the jury to the juryroom was to instruct as to the jurors' duties in determining the market value of the property. No objection is made to the form or substance of the instructions. We must assume that the jury weighed the evidence in the light of the court's instructions, that is, that the jury followed the instructions, which were proper. In *Zuckerman* v. *Underwriters at Lloyd's, London,* 42 Cal.2d 460 [267 P.2d 777], the Supreme Court said, at page 469: "It must be assumed that the jurors followed the court's direction and applied the law properly" and, at pages 478-479: "It must be assumed that the jury understood the instructions and correctly applied them to the evidence."

Viewing the case in its entirety, we believe there is no reasonable probability that absent the two errors discussed above, the jury would have arrived at a different verdict. (Const. art. VI, § 4½; *People* v. *Watson, supra; Murphy* v. *Atchison, Topeka & Santa Fe Ry., supra,* Witkin, Cal. Procedure, 1963 Supp. § 107, p. 757.)

The judgment is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied January 27, 1965, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1965.