Filed 3/30/16  Certified for publication 4/27/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMANDA GUERRA et al., | B266633 |
| Petitioners, | (WCAB No. ADJ8899793) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and PORCINI INC., et al., | |
| Respondents. | |

PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board.  Annulled and remanded with directions.

Law Offices of William W. Green and Neal T. Curatola for Petitioners.

Horvitz & Levy, Bradley S. Pauley and S. Thomas Todd; Williams-Abrego & Associates and Kevin D. Miller for Respondents.

Carlos Ivan Rodas (Rodas), age 32, died from a pulmonary hemorrhage while taking out the garbage at work. Rodas's arteries were prone to bleed because of lesions caused by tuberculosis. Internist Ronald Zlotolow, M.D. (Dr. Zlotolow) opined that either coughing, brought about by refuse odors, or lifting the garbage caused the bleeding. The Workers' Compensation Appeals Board (appeals board) rejected Dr. Zlotolow's opinion as speculative and ruled that it had not been shown that Rodas's death arose out of and in the course of his employment by Porcini, Inc. doing business as Guido's Restaurant (Guido's). We granted Rodas's petition for a writ of review because the inferences Dr. Zlotolow drew were reasonable and therefore probative circumstantial evidence. We annul the appeals board's decision, conclude that the death arose out of and in the course of employment and remand the case with directions to conduct further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### The employee and his death

Rodas worked as a dishwasher at Guido's. On March 18, 2012, Rodas took the trash from the restaurant to the dumpster located approximately 300 feet away from the restaurant. A patron of Guido's later found Rodas unresponsive and bloodied in Guido's parking lot. Rodas was pronounced dead at the scene by emergency personnel.

### Investigation

A Los Angeles county coroner's department investigator reported as follows:

"[Rodas] is approximately 18' north of Guido's entrance. . . . A dumpster is located approximately 300 [feet] northwest of [Rodas]. Approximately 1[foot] north of the dumpster is a large rubber trashcan resting on a flat dolly. This is the trashcan [Rodas] took outside to dump. The trash inside the large rubber trashcan is overflowing. On the trash itself is a large amount of blood spatter with red foam. On the ground approximately 3 [feet] west of the large rubber trashcan is coagulated blood and high velocity blood spatter. On the ground approximately 3 [inches] northeast of the large rubber trashcan is coagulated blood with high velocity blood spatter. From the large rubber trashcan to [Rodas] are approximately 13 separate sections where it appears [Rodas] stopped to projectile vomit blood. Each section has several large high velocity blood

2

drops/spatters. Some sections have coagulated blood, some have bloody foam."

Rodas was found with coagulated blood and bloody foam on his face, hands, and the front and back of his clothes.

The investigator learned that Rodas's grandfather had been exposed to tuberculosis as a boy and that the grandfather died of "emphysema/lung issues" with Rodas at his death bed. After the grandfather's death, the family was tested for tuberculosis. Rodas tested negative but a nurse who made home visits gave Rodas an unknown liquid medication. Rodas was otherwise in good health and regularly rode his bike and played soccer.

The autopsy report concluded that Rodas's death was caused by a hemorrhage from an invasive pulmonary aspergillosis[1] as sequelae of treated cavitary[2] tuberculosis.

**Ronald Zlotolow, M.D.**

Dr. Zlotolow, board certified in internal medicine, was retained by Rodas's family to opine on the cause of Rodas's death.[3] Dr. Zlotolow found as follows:

> "First, the trash bin was full. When the patient opened up the trash bin, he could have been exposed to substantial amount of fumes and odors, which could have caused him to develop a deep cough. When someone has a deep cough, it causes an increased intrathoracic [within the thorax[4]] pressure, which can play a substantial factor in causing an artery in the lung to hemorrhage and bleed. A second factor that could have contributed to the patient's death is the patient performing heavy lifting while taking out the trash, which can also increase the intrathoracic pressure and cause the

---

[1] Aspergillosis is an infection caused by molds.

[2] Cavitation is the formation of cavities in an organ.

[3] We acknowledge the respondent's argument that Dr. Zlotolow's report was inadmissible pursuant to Labor Code sections 4060 and 4062.2 and the recent decision in *Batten v. Workers' Comp. Appeals Bd.* (2015) 241 Cal.App.4th 1009. Since the argument was not raised in the petition for reconsideration it is therefore waived pursuant to Labor Code section 5904.

[4] The thorax is a cavity containing the lungs and heart.

artery to bleed. In my medical opinion, the reason why the arteries were prone to bleed was due to his non-industrial cavitary lesions brought on by the tuberculosis. I opine with reasonable medical probability that the cause of his bleed had to do with him taking the trash out, either due to the exposure to garbage waste and/or in combination with him performing heavy isometric lifting while taking out the trash, which both could have played substantial factors in causing the hemorrhage in his lung. The coroner's report stated that the patient was in front of the trash bin when he started bleeding. The patient was predisposed to bleeding due to the lack of natural protection from the cavitary lesions, however in my medical opinion, the exposure to trash fumes and/or the heavy lifting from taking out the trash played substantial factors [to] the hemorrhage in his lungs, which was the cause of death. Therefore at this point in time, I can state with reasonable medical probability that the patient's death is industrial."

**Ruling of the workers' compensation judge (WCJ)**

The WCJ concluded that Rodas sustained injury arising out of and occurring in the course of his employment that resulted in death. The WCJ based her decision on Dr. Zlotolow's opinion that garbage fumes and heavy lifting could have caused Rodas to cough and in turn to bleed.

Guido's petitioned for reconsideration, asserting that Dr. Zlotolow's opinion was not substantial medical evidence and was based on speculation and conjecture.

The WCJ recommended the petition be denied. The WCJ concluded that Dr. Zlotolow drew reasonable inferences from his review of the medical history and records to reach his conclusion based on medical probability.

**Rulings of the Appeals Board**

A majority of the appeals board rescinded the WCJ's finding and concluded that Rodas did not sustain injury arising out of and occurring in the course of employment. The majority concluded that Dr. Zlotolow's opinion was based on surmise, speculation, conjecture, or guess and therefore was not substantial evidence that Rodas's work contributed to the cause of his pulmonary injury and death.

Dr. Zlotolow's conclusion "with reasonable medical probability that [Rodas's] death is industrial" according to the appeals board, was conclusory based only "on the

4

doctor's speculation that Mr. Rodas '*could* have been exposed to a substantial amount of fumes and odors, which *could* have caused him to develop a deep cough[,]' and that a 'second factor that *could* have contributed to [Rodas's] death is the patient performing heavy lifting while taking out the trash, which can also increase the intrathoracic pressure and cause the artery to bleed.'" The appeals board rejected -- erroneously, as we explain below -- that Rodas could have smelled the refuse and that he exerted himself in manhandling the garbage.

The dissent found the WCJ's application of the "'contributing cause'" standard was proper. The dissent underscored that the employer takes the employee as he finds him at the time of the employment, and an employee may not be denied compensation merely because his physical condition was such that he sustained a disability which a person of stronger constitution or in better health would not have suffered. The dissent also found it unreasonable to assume that Rodas's work played no role in triggering his sudden pulmonary hemorrhaging. The dissent noted that the appeals board may draw reasonable inferences from the evidence.

## DISCUSSION

### I. Cause of bleeding is shown by circumstantial evidence

Liability exists "against an employer for any injury sustained by his or her employees arising out of and in the course of the employment" without regard to negligence. (Lab. Code, § 3600, subd. (a).)

The statutory requirement that the injury must have occurred "in the course of employment" ordinarily refers to the time, place and circumstances under which the injury is sustained. (*Griffin v. Industrial Acci. Com.* (1937) 19 Cal.App.2d 727, 732-733; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (Rev. 2d ed.) § 4.03, p. 4-35.) Here, there is no question that Rodas's death occurred while he was at work during work hours while wheeling an overflowing trashcan on a dolly to the dumpster.

The term "arise out of the employment" means that the injury must be proximately caused by the employment. (1 Hanna, *supra*, § 4.02[2], p. 4-15.) "'If the disability,

5

although arising from a [preexisting nonindustrial condition], was brought on by any strain or excitement incident to the employment, the industrial liability still exists. Acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration.'" (*California Casualty Indem. Exchange v. Industrial Acci. Com.* (1946) 76 Cal.App.2d 836, 840.)

It is undisputed that Rodas had tuberculosis. There is also nothing to contradict Dr. Zlotolow's medical opinion that Rodas's arteries were compromised by lesions caused by the tuberculosis. Also without contradiction stands Dr. Zlotolow's medical opinion that the bleeding occurred because of pressure exerted on the compromised arteries. The sole remaining question is the source of the pressure on the arteries that bled, causing Rodas's death.

In the context of this case, the question of what caused the intrathoracic pressure can be answered only by circumstantial evidence since direct evidence is obviously unavailable. We turn to the answers Dr. Zlotolow gave to this question.

"Circumstantial evidence is sufficient to support an award of the commission, and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required." (*Pacific Employers Ins. Co. v. Industrial Acci. Com.* (1942) 19 Cal.2d 622, 629.) "[C]ertainty is not the test of the admissibility of evidence . . . . The test is whether the inferences which it is alleged may be drawn from proffered evidence might be drawn by a reasonable mind and whether it is relevant to the issues to be determined by the jury." (*People ex rel. Department of Public Works v. Graziadio* (1964) 231 Cal.App.2d 525, 530-531.)

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) "'In *Kerr v. Ayre S. S. Co.*, (1915) App. Cas. 217, 233, Lord Shaw draws the distinction between conjecture and inference in these words: "The distinction is as broad as philosophy itself. It is that an inference rests upon premises of

6

fact and a conjecture does not."'" (*Brown v. Industrial Acci. Com.* (1941) 44 Cal.App.2d 6, 13.)

The *inferences* drawn by Dr. Zlotolow were that the intrathoracic pressure was caused by coughing in reaction to odors from the garbage or from lifting or handling the garbage. The *facts* upon which these inferences are based are that Rodas was in the close vicinity of the garbage that he was taking to the dumpster, that restaurant refuse emits odors, and that, whatever the details of Rodas's involvement with the trashcan were, it is undisputed that Rodas physically exerted himself in manhandling the dolly bearing the trashcan.

With one exception, the facts on which Dr. Zlotolow's inferences were based are undisputed. Rodas was taking garbage from the restaurant to the dumpster. According to the investigator's report, the trashcan was overflowing. The trashcan was on a flat dolly which means that Rodas likely lifted the trashcan at some point to put it on the dolly and then pushed the dolly to the dumpster for a distance of over 300 feet.[5] This work required some exertion, including lifting.

The appeals board majority rejected that physical exertion was involved by stating that the trashcan was still on the dolly and therefore it had not been lifted by Rodas. This of course ignores that the trashcan was somehow placed onto the dolly (the trashcan's presence on the dolly being circumstantial evidence of it having been previously placed there) and that Rodas pushed the dolly several hundred feet to the dumpster. In short, it is clear that physical exertion was involved in the work that Rodas was doing.

It seems more than just plausible that garbage from the restaurant kitchen was emitting odors, especially since the trashcan was full. The appeals board, having read

---

[5]    The dumpster was 300 feet from where Rodas was found; Rodas himself was 18 feet north of the restaurant entrance. The dolly with the trashcan was within one foot of the dumpster.

"bin" in Dr. Zlotolow's statement to mean "dumpster,"[6] opined that there was no evidence that Rodas opened the dumpster and thus there is no evidence that he smelled the dumpster's contents. This of course is beside the point since it is undisputed that Rodas was handling the full trashcan and wheeling it to the dumpster. Thus, he must have inhaled the contents of the trashcan and not the contents of the dumpster.

The facts foundational to the inferences drawn by Dr. Zlotolow were that Rodas was physically exerting himself and that he was handling (in close vicinity) the restaurant garbage. There is no dispute that unfortunately Rodas bled copiously. Dr. Zlotolow explained the bleeding was caused by pressure on the compromised arteries. Up to this juncture, the evidence is essentially undisputed and the medical opinion, that intrathoracic pressure caused the bleeding, is also uncontested. At this point in the narrative, Dr. Zlotolow offered the inferences that the pressure was generated by coughing "and/or" by physical exertion. That garbage emits odors that will cause a person to cough and that physical exertion is required to manhandle a large trashcan over a distance of 300 feet are eminently reasonable inferences validated by common experience. They are also based on a solid structure of facts and undisputed medical conclusions. The appeals board appears to have overlooked that certainty is not the test of a reasonable inference. The inquiry is whether the inference is one that may be drawn by a reasonable mind. (*People ex rel. Department of Public Works v. Graziadio, supra*, 231 Cal.App.2d at pp. 530-531.)

"'It is not incumbent upon a plaintiff to show that an inference in his favor is the only one that may be reasonably drawn from the evidence; he need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence. [Citations.] . . . The mere fact that other inferences adverse to plaintiff might be drawn does not render the inference favorable to plaintiff too

---

**6** Dr. Zlotolow stated that the "trash bin was full." The appeals board decided to equate "bin" with dumpster. However, the only receptacle that was reported being full in the investigator's report was the trashcan.

conjectural or speculative for consideration [by the jury].' [Citations.]" (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 121.)

Applying the aforesaid principles to this case, it may well be that another medical expert may opine that the arterial bleeding that killed Rodas commenced spontaneously and not as a result of physical exertion or coughing caused by obnoxious odors. Some such theory must underlie the appeals board's conclusion. While there is no medical evidence that the bleeding was spontaneous, we are willing to entertain for the purpose of argument that this may be a reasonable inference. The important point is that even if spontaneous bleeding is a reasonable inference, the existence of this reasonable inference does not negate the reasonableness of the inferences that Dr. Zlotolow drew. (*Campbell v. General Motors Corp., supra*, 32 Cal.3d at p. 121.)

## II. Cause of death in the workers' compensation system

In the case of death occurring at work, the difficulty in proving industrial causation is "no reason to deny an award if the evidence warrants it." (*Clemmens v. Workers' Comp. Appeals Bd.* (1968) 261 Cal.App.2d 1, 7.) All reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee. (*Id*. at p. 8.) This is consistent with the mandate that the workers' compensation laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.) As aptly stated by the dissent, "Rodas was in the normal course of his duties when he was overcome by sudden, massive pulmonary bleeding. In the absence of any other plausible explanation, it is not medically probable that this event was entirely unrelated to his work."

The recent Supreme Court case of *South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015) 61 Cal.4th 291 detailed the less restrictive causation standard in the no-fault workers' compensation system. "'In general, for the purposes of the causation requirement in workers' compensation, it is sufficient if the connection between work and the injury be a contributing cause of the injury . . . .' [Citations.]" (*Id*. at p. 298.) "A corollary of the no-fault principles of workers' compensation is that 'an employer takes

9

the employee as he finds him at the time of the employment'" and, thus, "'an employee may not be denied compensation merely because his physical condition was such that he sustained a disability which a person of stronger constitution or in better health would not have suffered.' [Citations.]" (*Id*. at p. 300.) The Supreme Court held that a medical opinion that industrial causation was "not zero" was sufficient contribution to award death benefits. (*Id*. at p. 303.)

We therefore find, based on the expert medical testimony of Dr. Zlotolow that the injury that led to Rodas's death arose out of and in the course of employment.

## DISPOSITION

The decision of the Workers' Compensation Appeals Board granting the petition for reconsideration of Porcini, Inc. doing business as Guido's Restaurant is annulled and the matter is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

10

Filed 4/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMANDA GUERRA et al., | B266633 |
| Petitioners, | (WCAB No. ADJ8899793) |
| v. | ORDER FOR PUBLICATION |
| WORKERS' COMPENSATION APPEALS BOARD and PORCINI INC., et al., | |
| Respondents. | |

THE COURT:*

      The opinion in the above entitled matter filed on March 30, 2016, was not certified for publication.

      For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

*BOREN, P. J., CHAVEZ, J., HOFFSTADT, J.