[Civ. No. 6685.   Fourth Dist.   Apr. 6, 1962.]

JOHN R. DUNHAM et al., Plaintiffs and Respondents, v. CITY OF WESTMINSTER et al., Defendants and Appellants.

Jones & Jones and Donald A. Jones for Defendants and Appellants.

Stephen K. Tamura, County Counsel, and Adrian Kuyper, Assistant County Counsel, for Orange County as Amicus Curiae on behalf of Defendants and Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Los Angeles County as Amicus Curiae on behalf of Defendants and Appellants.

Ronald L. Tiday for Plaintiffs and Respondents.

SHEPARD, J.—This is an appeal from a judgment ordering the issuance of a peremptory writ of mandate to compel the issuance of a building permit.

FACTS

The essential facts are not in dispute. Respondent owns a building lot fronting on Westminster Avenue in the City of Westminster in an area zoned by the city ordinance as "C-2," which is for general business purposes. Section 8200.20(C).26 of the city's planning and zoning regulation provides in substance that no permit shall be issued in zones C-1, C-2, M-1, M-2, M-3, R-2 and R-3 for construction of a building on the land which abuts on any street shown on the city's official highway map adopted August 17, 1959, until and unless the right-of-way for such street to the width shown on the official map has been dedicated to the city and improved by paving, curbs, gutters and street drainage and an agreement therefor has been executed by the owners. Provision is made in the ordinance for the granting of variances from the requirements of this section, (a) under special circumstances not applying generally to other property in the neighborhood; (b) where necessary for the preservation and enjoyment of substantial property rights; (c) where the property development will not be materially detrimental to the neighborhood; (d) where the variances will not adversely affect any Master or Precise plan.

See note 1 for copy of section 8200.20(C).26.

NOTE 1: Section 8200.20(C).26. No building shall be used, or constructed to be used for any of the commercial, industrial and multiple residential uses permitted in the C-1, C-2, M-1, M-2, M-3, R-2 and R-3 zones, nor shall a permit for the construction of such building be issued or a Certificate of Use and Occupancy therefor be issued by the Building and Safety Department, where the land to be used up [sic] for said uses abuts upon any highway or street shown on the

On December 15, 1959, respondents applied for a building permit for the construction on their lot of a two-room private office building 240 square feet in size, to serve their contracting business. The building department of the city made no criticism of the plans and specifications nor denied that the purpose was proper within their C-2 zone, but they refused to file the application unless it was accompanied by a dedication to the city for street purposes of a strip 14 feet in width across the front of the lot and an agreement to improve said strip with paving, curbs, gutters and drainage in accordance with the requirements of the ordinance; or unless they applied for and obtained a variance in accordance with said section 8200.20(C).26.

Official Street and Highway Map of the City of Westminster adopted by the City Council of the City of Westminster on August 17, 1959 and as may be hereafter amended, until and unless the right of way for such street or highway to the width shown on the Official Street and Highway Map has been dedicated to or vested in the City of Westminster and such right of way including that portion of any existing dedicated street which would normally revert to the abutting property if the street were vacated has been improved by installation of paving, curbs, gutters and street drainage, in full compliance with "Standard Streets and Highways Plans" adopted by the Orange County Board of Supervisors, January 30, 1959, as amended, or as may be amended by the City Council of the City of Westminster or the owner has dedicated or irrevocably offered to dedicate such right of way, and prepared plans for the improvement of the street or streets or highway or highways and has entered into an agreement with the City of Westminster to make such improvements.

In the event an agreement for the improvements is entered into, the City Council of the City of Westminster may require that the agreement be secured by a good and sufficient bond, or it may accept in lieu thereof a cash deposit, which bond or cash deposit shall be in an amount equal to the estimated cost of the improvements.

Commercial, industrial and multiple residential uses means any retail, wholesale or manufacturing business, the carrying on of any profession, the operation of auto or trailer parks, hotels or any other business, and multiple residential use where the density exceeds one (1) dwelling unit for each 3000 sq. ft. of land area; but does not include farming or the conducting of temporary stands for the sale of agricultural or farming products grown or produced on the premises as accessory use to the land or single family residential use or multiple residential use where the density factor is one (1) dwelling unit or less for each 3000 sq. ft. of land area.

"Variances to the terms of this section may be granted for any of the reasons sufficient under the provisions of sub-section B of Section 8200.21 to permit variances to any other provisions of this Ordinance. Notwithstanding anything in this Ordinance to the contrary, application for variances to this Section shall be made pursuant to the provisions of Subsection D of Section 8200.21, and such applications shall be heard and determined by the Area Variance Committee in the same manner as said Committee hears and passes upon a minor variance pursuant to the provision of said subsection D of Section 8200.21 hereof."

Another application was made by respondents on January 28, 1960 with similar results. On January 29 a similar application was presented to the city council of the city and respondents were again advised that the application was rejected in the absence of the dedication and agreement above referred to or the securing of a variance in accordance with said section 8200.20(C).26. Respondents refused to apply for a variance and brought this action for a writ of mandate and for declaratory relief, contending that the ordinance is unconstitutional and void.

The cause was tried at length and the trial court found the ordinance to be unconstitutional and ordered the issuance of a writ of mandate to compel the granting of a building permit. Because of our conclusion that respondents did not exhaust their administrative remedy in that they refused to apply for a variance, the details of the evidence are not here recited.

### EXHAUSTION OF ADMINISTRATIVE REMEDY A PREREQUISITE TO JUDICIAL RELIEF

Appellants contend, and we are forced to agree, that the refusal of respondents to apply for a variance as provided by the ordinance foreclosed them from invoking judicial relief.

Nearly 60 years ago in *United States* v. *Sing Tuck,* 194 U.S. 161 [24 S.Ct. 621, 48 L.Ed. 917] the United States Supreme Court recognized the necessity for orderly exhaustion of the administrative remedies before court intervention, even in a case of habeas corpus challenging constitutionality. Since that time, the number of new administrative processes rapidly increased under the pressure of tremendous advances in science and technology and consequent complications in adjustment of the social order. The courts, in order to avoid being completely swamped by attempts to challenge administrative steps in their preliminary phases, have, with some wavering, it is true, been forced to adhere with more and more insistence, to the principle of exhaustion of administrative process. The problem still has many perplexing aspects and not infrequently courts have seen fit to make apparent exceptions. (*Reeber* v. *Rossell,* 91 F.Supp. 108; *Parker* v. *Lester,* 227 F.2d 708.) It has also happened on a few occasions, that decisions have been made where the question could apparently have been raised and was ignored and must therefore be deemed not to have been before the court.

However, in cases squarely before the Supreme Court of California, that court has clearly established the rule as binding on our state courts. ▮ As was said in *United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26],

"It is now firmly established in this state that a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts. Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure. (Citation.) In the present case, the persons who are the plaintiffs in the injunction proceeding invoked the administrative process to secure a review of the challenged order and, at practically the same time, sought judicial relief. The respondents apparently contend that the requirement of exhaustion of administrative remedies applies only to erroneous orders and does not preclude judicial interference where, as here, an order is assailed as a nullity because illegally adopted and where the agents for enforcement appointed thereunder are charged with being mere pretenders claiming powers which they do not lawfully possess. But there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority.

"Conceding the existence of such a distinction, however, the doctrine of exhaustion of administrative remedies is not so limited. ▮ For example, it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction. (Citations.) ▮ And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief."

See also *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292 [6] [109 P.2d 942, 132 A.L.R. 715]; *Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267, 269 [1] [148 P.2d 645]; *City of Susanville* v. *Lee C. Hess Co.,* 45 Cal.2d 684, 689 [1] [290 P.2d 520]; *City of Chico* v. *First Ave. Baptist Church,* 108 Cal.App.2d 297, 301 [3] [238 P.2d 587]; *Banville* v. *County of Los Angeles,* 180 Cal.App.2d 563, 570, 571 [1-6] [4 Cal.Rptr. 458]; 48 Yale L.J. 981, 992.) ▮ The rule of exhaustion of administrative remedy applies even though

the action be for declaratory relief. (26 C.J.S. 85, and authorities there cited; *Louis Eckert Brewing Co.* v. *Unemployment Reserves Com.*, 47 Cal.App.2d 844, 847-848 [2] [119 P.2d 227].) Respondent is not precluded, if he has exhausted the administrative remedy, from challenging the constitutionality of the ordinance. (*Rubin* v. *Board of Directors*, 16 Cal.2d 119, 126 [4] [104 P.2d 1041]; *Metcalf* v. *County of Los Angeles*, 24 Cal.2d 267, 272 [3] [148 P.2d 645]; *Garden Grove Congregation* v. *City of Garden Grove*, 176 Cal.App.2d 136, 143 [5] [1 Cal.Rptr. 65]; *Floresta, Inc.* v. *City Council*, 190 Cal.App.2d 599, 612 [14] [12 Cal.Rptr. 182].)

From the foregoing it is clear that the evidence and questions relating to unconstitutionality are not properly before us.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 1, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 29, 1962.