[Civ. No. 7054. Fourth Dist. July 11, 1963.]

ARCHIE J. SNEED, Plaintiff and Appellant, v. COUNTY OF RIVERSIDE et al., Defendants and Respondents.

Cameron W. Cecil for Plaintiff and Appellant.

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, Swarner, Fitzgerald & Dougherty and Lewis F. Jacobsen for Defendants and Respondents.

BROWN (Gerald), J.—Plaintiff has appealed from a judgment of dismissal entered after demurrers were sustained to the first amended supplemental complaint without leave to amend.

The first amended supplemental complaint (hereinafter called complaint) seeks to establish a cause of action in inverse condemnation against defendant County of Riverside, with the proceeds of such action belonging to plaintiff and

not to defendants James Minor and Jessie F. Minor (hereinafter called Minor).

The only question is whether the court erred in sustaining a demurrer to the complaint. For that purpose the allegations of the complaint must be accepted as true. (*Gogerty* v. *Coachella Valley Jr. College Dist.*, 57 Cal.2d 727, 730 [21 Cal.Rptr. 806, 371 P.2d 582].) We have concluded the complaint sets forth a cause of action.

In substance the complaint states that plaintiff owned 234½ acres of improved real property adjacent to Ryan Airport which is owned, operated and maintained by Riverside County; pursuant to the authority given counties by Government Code sections 50485-50485.14, on February 10, 1958 the Riverside County Board of Supervisors adopted Ordinance No. 448, which was an "Ordinance of the County of Riverside establishing airport operating areas and regulating height standards and limits therein."

Plaintiff claims that by reason of the ordinance the county took from him an air navigation easement over approximately 60 acres of his property, the easement ranging from 4 feet in height at that part of the property closest to the airport to a height of 75 feet farthest away, all within the "Glide Angle of the Clear Zone and Approach Zone." In his closing brief plaintiff asserts the 4 feet mentioned above is wrong and instead the minimum distance above his property at the beginning of the easement is 3 inches. Whether the minimum figure is 3 inches, 4 feet, or 24 feet as claimed by respondent county, is a question of fact to be determined in trial.

The property over which the ordinance is effective has a railroad on one side, a highway on the other, a road on the third side, and the fourth side is 10 feet from the airport runway. It is alleged that large numbers of aircraft have used the airport since the ordinance was adopted; the intent and purpose of the ordinance was to obtain for the county and for all parties using the airport a flight easement at all levels above the "Glide Angle of the Clear Zone and Approach Zone" ranging from 4 feet to 75 feet above plaintiff's land.

Plaintiff's property was a thoroughbred race horse breeding and training farm, certain improvement structures of which exceed the height permitted by the ordinance.

It is claimed the fair market value of the property was

reduced from $550,000 before the ordinance was passed to $225,000 afterwards. Plaintiff filed his claim and it was rejected by the Board of Supervisors of Riverside County.

After suit was begun plaintiff sold the property to defendants Minor, who knew of the lawsuit and orally agreed the proceeds should be plaintiff's property. Defendants do not question or argue this subject matter in their briefs.

The basic controversy is whether the Riverside County Ordinance is in reality a height limit ordinance authorized under the police power or whether it takes an air easement over plaintiff's property without payment of compensation therefor.

Article I, section 14 of the California Constitution provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner. . . ."

The Code of Civil Procedure sections 1239.2 and 1239.4 authorizes counties to acquire airspace or air easements through eminent domain proceedings, in airspace above property if the taking of such is necessary to protect the approaches to airports.

The Airport Approaches Zoning Law, Government Code sections 50485-50485.14, defines and authorizes the elimination of airport hazards, to "be accomplished, *to the extent legally possible,* by exercise of the police power. . . ." (Gov. Code, § 50485.2.) (Italics ours.)

Section 50485.13 provides: "In any case in which: . . . (b) the approach protection necessary cannot, *because of constitutional limitations,* be provided by airport zoning regulations under this article . . . the . . . county within which the property . . . is located, or the . . . county owning the airport or served by it may acquire, by purchase, grant, or condemnation in the manner provided by the law under which a . . . county is authorized to acquire real property for public purposes, such air right, air navigation easement, or other estate or interest in the property or nonconforming structure or use in question as may be necessary to effectuate the purposes of this article." (Italics ours.)

Ordinance No. 448 of Riverside County, which is attached to the complaint as an exhibit, describes itself as the "Airport Approaches Zoning Ordinance," and states that it is adopted pursuant to the Airport Approaches Zoning Law recited in the Government Code, *supra.*

Section 8 of Ordinance No. 448 provides in part: "Noth-

ing in this ordinance shall be construed as depriving any person who shall suffer damages by reason of the use of airspace adjacent to or over his property by aircraft of bringing an appropriate notice for such damages."

In summary, the zoning law and the zoning ordinance permit elimination of airport hazards in approaches to airports through the exercise of the police power "to the extent legally possible" (Gov. Code, § 50485.2); where "constitutional limitations" prevent the necessary approach protection under the police power, the necessary property right may be acquired by purchase, grant, or condemnation in the manner provided by law.

While height restriction zoning has long been recognized as a valid exercise of the police power, there has been a reluctance to extend this method to the protection of approaches to airports; instead, air easements with payment of compensation appear to be the more acceptable, although not undisputed, method of protecting approach zones. (See 13 Hastings L.J. 397, *Airport Zoning and Height Restriction*.)

We believe there is a distinction between the commonly accepted and traditional height restriction zoning regulations of buildings and zoning of airport approaches in that the latter contemplates actual use of the airspace zoned, by aircraft, whereas in the building cases there is no invasion or trespass to the area above the restricted zone.

In his complaint plaintiff seeks to set forth two bases upon which he is entitled to compensation, (1) upon an easement obtained through the ordinance, and (2) on the ground that large numbers of aircraft take off and land, fly at low altitudes over plaintiff's property pursuant to instructions from the employees of defendant county. We believe that a cause of action has been stated on each ground.

In *Griggs* v. *Allegheny County*, 369 U.S. 84 [82 S.Ct. 531, 7 L.Ed.2d 585], the court held the operator of an airport was liable, under certain circumstances, for the taking of an easement of flight over property necessary for the use of airplanes in landing and taking off from the airport. The circumstances of that case involved actual interference with the livability of residential quarters near the end of the runway.

*Johnson* v. *Airport Authority of City of Omaha*, 173 Neb. 801 [115 N.W.2d 426] was an action brought by the airport authority to condemn airspaces over lands in the vicinity of an airport and to condemn obstructions within the designated

airspaces. The action was brought pursuant to statutory provisions relating to the taking and damaging of private property for public use. The lowest portion of the easement was 26 feet over plaintiff's property; two trees were taken which extended above the 26-foot limit, and in another phase of the case was the "incorporeal taking above that height of the right of use and occupancy in the landing and taking off of aircraft." (P. 429 [115 N.W.2d].)

The right to condemn and take was not questioned in the case; the airport authority conceded damages for the taking of the trees, but contended damages sustained by the incorporeal taking were not compensable. The court stated at page 431 [115 N.W.2d], "The legal authorities are in substantial accord in the view that a taking of real property in the establishment of an avigation easement which reduces the value of that to which the easement attaches entitles the owner to damages in the amount of the difference in value before and after the taking. See, *United States* v. *Causby,* 328 U.S. 256 [66 S.Ct. 1062, 90 L.Ed. 1206]; *Griggs* v. *County of Allegheny,* 369 U.S. 84 [82 S.Ct. 531, 7 L.Ed.2d 585].

". . . . . . . . . . . . . .

". . . all of the decisions previously cited herein from the United States courts clearly declare that damage to the value of land caused by navigation within an avigation easement amounts to a taking within the meaning of the Fifth Amendment."

■ A temporary invasion of airspace by aircraft over land of another is privileged so long as it does not unreasonably interfere with persons or property on the land. (*La Com* v. *Pacific Gas & Elec. Co.,* 132 Cal.App.2d 114 [281 P.2d 894, 48 A.L.R.2d 1455].)

See also *Thornburg* v. *Port of Portland,* 233 Ore. 178 [376 P.2d 100] and *Ackerman* v. *Port of Seattle,* 55 Wn.2d 400 [348 P.2d 664]. In the *Ackerman* case the court stated:

"One of the fundamental principles involved in this action is the ownership of private property and the right to the free use and enjoyment thereof. Another basic principle is the authority of the government (always subject to constitutional safeguards) to regulate the use and utilization of private property for the promotion of the public welfare. At times, as in the instant litigation, these principles are in conflict, and the courts are called upon to resolve the resulting problem in human and legal relationships. In doing so, the courts constantly emphasize the concepts of (1) 'regula-

tion' under the police power, and (2) 'constitutional taking or damaging' under the eminent domain power. When restrictions upon the ownership of private property fall into the category of 'proper exercise of the police power', they, validly, may be imposed without payment of compensation. The difficulty arises in deciding whether a restriction is an exercise of the police power or an exercise of the eminent domain power. When private property rights are actually destroyed through the governmental action, then police power rules are *usually* applicable. See *State* ex rel. *Miller* v. *Cain* (1952) 40 Wn.2d 216 [242 P.2d 505]. But, when private property rights are taken from the individual and are conferred upon the public for public use, eminent domain principles are applicable. See, generally, *Conger* v. *Pierce County* (1921) 116 Wash. 27 [198 P. 377, 18 A.L.R. 393].

"In this connection it is well to recall the words of Justice Holmes in *Pennsylvania Coal Co.* v. *Mahon* (1922), 260 U.S. 393, 415, 416 [43 S.Ct. 158, 160, 67 L.Ed. 322]:

" '. . . The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. [Citing case.] When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

" '. . . *We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.* . . .' (Emphasis supplied.)" (Pp. 668-669 [348 P.2d].)

The court held in *Ackerman, supra,* that the "alleged continuing and frequent low flights over the appellants' land amount to a taking of an air easement for the purpose of flying airplanes over the land" and that the port, which did not operate the planes, but operated the airport, was liable for the alleged taking.

In *Jensen* v. *United States* (Ct. Cl.) 305 F.2d 444, plaintiffs sued in four related cases for just compensation for the taking of avigation easements over their properties. The government did not deny a taking occurred and conceded if the

claims were not barred by limitations it was proper for the court to allow compensation for the taking. The facts indicated it was clear the flights directly and immediately interfered with the use and enjoyment of plaintiffs' properties; there was noise intensity as well as frequent low level flights by large airplanes. (See also *Aaron* v. *United States* (Ct. Cl.) 311 F.2d 798.)

The minority view in the United States is expressed in the case of *Harrell's Candy Kitchen, Inc.* v. *Sarasota-Manatee Airport Authority* (Fla.) 111 So.2d 439.

■ Defendants contend plaintiff failed to exhaust his administrative remedies as a prerequisite to judicial relief; that he should have sought a permit from the Planning Commission with respect to nonconforming uses or variances under section 7 of Ordinance No. 448; and cite *Dunham* v. *City of Westminster*, 202 Cal.App.2d 245 [20 Cal.Rptr. 772], as authority for the point that administrative remedies must be exhausted. In the *Dunham* case a city building department refused to file an application for a building permit unless plaintiffs dedicated and agreed to improve a portion of their property for street purposes, or were relieved from same by obtaining a variance; plaintiffs asserted the ordinance was unconstitutional; this court held plaintiffs had not exhausted their administrative remedies. In the instant case, however, the situation is different in that it is not the plaintiff who has sought or obtained a change from what existed before, but the county which has invaded the alleged property rights of plaintiff, and in response thereto plaintiff does not challenge the constitutionality of the ordinance but merely seeks damages in inverse condemnation as provided in section 8 of the ordinance.

Judgment reversed.

Griffin, P. J., and Coughlin, J., concurred.

The petitions for a rehearing were denied August 1, 1963, and respondents' petitions for a hearing by the Supreme Court were denied September 4, 1963.