[Civ. No. 41428. First Dist., Div. Four. May 25, 1978.]

PAN PACIFIC PROPERTIES, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SANTA CRUZ et al., Defendants and Respondents.

### COUNSEL

Little, Evans, Zoller, White, Dok, Daiker & Matteoni, Norman E. Matteoni, Wyckoff, Parker, Boyle & Pope and Alan P. Delfino for Plaintiffs and Appellants.

Clair A. Carlson, County Counsel, and James M. Ritchey, Assistant County Counsel, for Defendants and Respondents.

### OPINION

**PAIK, J.**[*]—Plaintiffs-appellants Pan Pacific Properties, Inc., First National Mortgage Co. of San Jose and Edgar R. Dethlefsen (hereafter appellants) appeal from a judgment of dismissal in Santa Cruz County Superior Court following the trial court's order sustaining the demurrer of defendants-respondents County of Santa Cruz, Board of Supervisors of the County of Santa Cruz and other named individuals (hereafter collectively referred to as the County). The order sustained the County's demurrer to appellants' complaint for inverse condemnation and declaratory relief "with prejudice."

Appellants own parcels of land adjacent to Riverside Drive on either side of its intersection with Judd Road near Highway 1 in the County of Santa Cruz. "Subject A," which lies northeast of this intersection, is approximately 1.8 acres in size and owned by appellant Pan Pacific, with appellant First National holding a first deed of trust on the property. "Subject B," which lies southeast of the intersection, consists of approximately .8 acre and is owned by appellant Dethlefsen.

Prior to 1969, the parcels were zoned "A-10," or agricultural. On September 16, 1969, the County Board of Supervisors (hereafter Board) passed resolution No. 1461, rezoning the properties "C-3-D" or "Highway Commercial." In 1972, the Board adopted the Pajaro Valley General

---

[*]Assigned by the Chairperson of the Judicial Council.

Plan for the area. On March 27, 1973, the Board amended the plan to include a parks and recreation open space (PROS) element, under which the properties were recommended for agricultural land use. On March 30, 1976, after a public hearing, the Board voted to adopt ordinance No. 2268, rezoning the properties "A-1-PD" or agricultural use with a one-acre minimum building site. The Board made the finding that the new zoning was "consistent with all elements of the Santa Cruz County General Plan." The ordinance became effective on April 30, 1976.

On September 24, 1976, appellants commenced this action in superior court for inverse condemnation and declaratory relief. The complaint alleged that the rezoning of appellants' properties was arbitrary and discriminatory. It further alleged that the rezoning prohibits "any and all beneficial and reasonable use" of appellants' land and therefore constitutes a taking of such land without compensation. In a separate cause of action, appellants contended that the rezoning of their property is unconstitutional and void, contrary to the general plan and void for failure to prepare an environmental impact report prior to the enactment of the ordinance. The complaint prayed for a declaration that appellants' properties had been taken for public use with damage in the sums of $95,000 and $75,000 respectively, or in the alternative for a declaration that the zoning was illegal, unconstitutional and void as applied to appellants' parcels.

The County demurred to the complaint, inter alia, on grounds that the action was barred by various applicable statutes of limitations and that the court lacked subject matter jurisdiction over each cause of action. At the hearing, and in his brief, the County counsel represented that the County has always permitted a single-family dwelling to be constructed on land zoned for agricultural use regardless of whether adjacent land was used for farming purposes.

The court sustained the demurrer "with prejudice," relying in part on the foregoing representation. This appeal ensues.

The essence of appellants' action below was to seek a declaration that the ordinance was arbitrary and discriminatory and therefore invalid as applied to their land; or that if valid, such zoning amounted to a taking of property without just compensation in that it deprived them of all reasonable and beneficial uses of their properties.

Although appellants filed a claim for damages with the County prior to instituting this suit (Gov. Code, § 905 et seq.), appellants sought no variance from the ordinance, nor did they apply to the County for any building or use permits. "A party aggrieved by the application of a statute or ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief." (*Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267, 269 [148 P.2d 645]; see *Igna* v. *City of Baldwin Park* (1970) 9 Cal.App.3d 909 [88 Cal.Rptr. 581]; *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82 [143 Cal.Rptr. 441]; *Frisco Land & Mining Co.* v. *State of California* (1977) 74 Cal.App.3d 736 [141 Cal.Rptr. 820].)

In *Metcalf,* property owners operated a quarry, which had been rezoned for residential and agricultural use. Alleging that their land had no appreciable value except for rock development and rock crushing, they brought an action to enjoin enforcement of the rezoning ordinance as an unconstitutional deprivation of property. (*Id.,* at pp. 268-269.) The court held that where an ordinance is alleged to be unconstitutional as applied to a particular property, a party cannot maintain an action to attack such ordinance before applying to zoning authorities for a variance or exception under the act. (24 Cal.2d at p. 270.)

Section 13.04.440 of the Santa Cruz County Code provides that an aggrieved party may apply for a zoning variance with respect to that party's land. Here, appellants failed to take advantage of this review process. Such failure or refusal to exhaust their administrative remedies forecloses any action attacking the validity of the ordinance. (*Metcalf, supra*; *Dunham* v. *City of Westminster* (1962) 202 Cal.App.2d 245, 248-249 [20 Cal.Rptr. 772]; Cal. Zoning Practice (Cont.Ed.Bar 1969) § 12.19, p. 519.)

The complaint further alleges that the zoning has deprived appellants of any reasonable beneficial use of the property, thus constituting a "taking" without just compensation in violation of the United States and California Constitutions. (See *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613, 624 [129 Cal.Rptr. 575].) By failure to apply for a variance, appellants have in effect deprived the County of an opportunity to correct the alleged constitutional infirmity. As it was noted in *Metcalf,* since a legislative body cannot foresee all variable conditions under which a given zoning ordinance may not be appropriate due to "*constitutional* objections or other special considerations" (24 Cal.2d at

p. 271, italics added), almost every zoning ordinance contains provisions whereby an owner may apply to an administrative body for permission to put his land to a nonconforming use.

Appellants argue that they need not have exhausted their administrative remedies, because the administrative agency's decision is certain to be adverse. (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761]; *Sneed* v. *County of Riverside* (1963) 218 Cal.App.2d 205 [32 Cal.Rptr. 318]; *Eldridge, supra,* 57 Cal.App.3d at pp. 632-633.) In *Sneed, Ogo* and *Eldridge,* it was demonstrated that "the aggrieved party can positively state what the administrative agency's decision in his particular case would be."[1] (*Ogo, supra,* 37 Cal.App.3d at p. 834.)

The facts of this case are substantially similar to those in *Frisco Land & Mining Co.* v. *State of California, supra,* 74 Cal.App.3d 736. There, a regional commission created under the Coastal Conservation Act of 1972 attempted to place certain conditions upon the issuance of a building permit to a subdivider. The subdivider withdrew his application for a blanket permit and instead instituted an action seeking damages in inverse condemnation and challenging the constitutionality of the act. The Court of Appeal rejected the subdivider's contention that pursuance of his administrative remedies would have been futile: "In fact, however, the coastal commission consistently recognized the right of lot owners, including the subdivider itself, to build homes on the lots in the subdivision, provided that they complied with conditions reasonably related to preserving attributes of the property which the electorate had deemed of importance. There was no reason why the subdivider could not have tested the validity of those conditions through the administrative and judicial proceedings provided by law. We cannot assume that any invalid conditions would have been approved after such review." (74 Cal.App.3d at p. 757.)

Here, the ordinance under which appellants' property was rezoned (Santa Cruz County Code, § 13.04.205.28) listed under "permitted uses":

---

[1] In *Sneed,* there was no nonconforming use to apply for: The county had enacted airport zoning ordinances which resulted in the taking of an easement for airspace over plaintiff's adjacent land. (218 Cal.App.2d at p. 209.) In *Ogo,* the city council had rezoned an area to prevent the very use intended by plaintiff. (37 Cal.App.3d at p. 834.) Finally, in *Eldridge,* any nonconforming use would have been totally contrary to the city's stated goal of preserving land in its natural or near-natural state, under which the land was zoned "open space." (57 Cal.App.3d at pp. 632-633.)

"3. One-family dwelling of the owner or lessee of the land or any employee or an employee of the owner or lessee of the land upon which the use or permitted use is carried on." At the hearing on the demurrer, and in his brief, County counsel stated that the above statute had always been construed by the County to permit single-family residences and this was the very interpretation given to it by the planning commission's staff report which was submitted to the Board prior to the rezoning. Thus, had appellants applied for a variance or sought a use permit, it was not certain that the County's decision would have been adverse to them. From all indications, that decision would have been *favorable* to appellants, i.e., allowed appellants a reasonably beneficial use of the property. (*Mountain View Chamber of Commerce* v. *City of Mountain View, supra,* 77 Cal.App.3d 82.)

■ Appellants point to their allegation in their complaint that they "have exhausted their administrative remedies." It is settled, however, that while a demurrer admits all material facts which are properly pleaded, it does not admit conclusions of fact or law alleged therein. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) Appellants' conclusionary statement that they exhausted their administrative remedies therefore cannot avail them.

■ Appellants' failure to exhaust an administrative remedy is a jurisdictional defect. (*Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111 [122 Cal.Rptr. 282]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 64, p. 587; *Mountain View Chamber of Commerce* v. *City of Mountain View, supra*; *Frisco Land & Mining Co.* v. *State of California, supra,* 74 Cal.App.3d 736.) Thus the judgment of dismissal was proper.

Although dismissal was mandatory in view of the jurisdictional infirmities discussed heretofore, we further conclude that the trial judge, in any event, did not err in sustaining the demurrer without leave to amend for the following reasons.

In addition to attacking the zoning ordinance as arbitrary and capricious, appellants alleged that the ordinance was invalid on grounds that (a) it deprived appellants of "valuable property rights" without just compensation, (b) it is contrary to and inconsistent with the general plan of the County of Santa Cruz, (c) it is void in that no environmental impact report was prepared as required by the California Environmental Quality Act (CEQA).

At all times relevant herein, Santa Cruz County Code section 13.04.135 (hereafter section 13.04.135) provided, in pertinent part: "Any court action or proceeding to attack, review, set aside, void or annul any decision of matters listed in this Chapter otherwise subject to court review (other than those listed in Section 65907 of the Government Code) or concerning any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced *within 30 days after the effective date of such decision.* Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decisions or of such proceedings, acts or determinations." (Italics added.) This section, which provides a 30-day statute of limitations for judicial review of county zoning ordinances, has since been amended to provide for a 90-day period. Appellants' challenge to the ordinance was filed approximately 180 days after its enactment. Therefore, under either version of the statute, appellants' complaint was not timely filed.

■ Appellants argue that section 13.04.135 is invalid because it is preempted by state law. It is clear, however, that the Legislature has not evinced an intent to occupy the field in this area: Chapter 4 of title 7 of the Government Code (§ 65800 et seq.), which authorizes local governments to enact zoning ordinances, contains no limitations periods within which such ordinances must be challenged. Furthermore, Government Code section 65800 states: "[T]he Legislature declares that in enacting this chapter it is its intention to provide only a minimum of limitation *in order that counties and cities may exercise the maximum degree of control over local zoning matters.*" (Italics added.) In *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], the California Supreme Court was confronted with a similar ordinance which provided that zoning decisions of the Board " 'shall be final for all purposes unless a court review thereof is sought within thirty (30) days after such decisions become final.' " (*Id.,* at p. 268.) The court refused to hold the local limitations period invalid, but rather held that plaintiffs had substantially complied with it. (*Sanfilippo* v. *County of Santa Cruz* (N.D.Cal. 1976) 415 F.Supp. 1340, which is cited by appellants, did *not* invalidate section 13.04.135, but rather held that plaintiffs' action was specifically exempted from its terms. (*Id.,* at p. 1342.)

Thus under section 13.04.135, appellants are barred from attacking the validity or reasonableness of ordinance No. 2268. ■ We note also that appellants cannot challenge the ordinance as being inconsistent with the County's general plan, since such action must be brought by writ of mandamus, and within 90 days following its enactment (Gov. Code, § 65860, subd. (b); 58 Ops.Cal.Atty.Gen. 21, 25-26), neither of which was done here. ■ Nor can the ordinance be attacked or the County's decision be set aside on grounds of failure to prepare an environmental impact report, since any action or proceeding to attack or set aside the County's decision on grounds of noncompliance with CEQA must be done through administrative mandamus in accordance with Code of Civil Procedure section 1094.5. (Pub. Resources Code, § 21168.)

■ Furthermore, appellants' appropriate vehicle to review the legality of a zoning ordinance on grounds that it is discriminatory, was by "ordinary mandamus" under California Code of Civil Procedure section 1085, and not inverse condemnation. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516, fn. 13 [125 Cal.Rptr. 365, 542 P.2d 237], cert. den., 425 U.S. 904 [47 L.Ed.2d 754, 96 S.Ct. 1495].)

■ We now turn to appellants' major contention that a cause of action for inverse condemnation was stated under *Eldridge* v. *City of Palo Alto, supra.* In *HFH, Ltd.* v. *Superior Court, supra,* 15 Cal.3d 508, the California Supreme Court declared that inverse condemnation does not lie for zoning actions in which the only alleged effect is a mere reduction in market value. (*Id.,* at p. 513.) Consequently, it was held that the trial court correctly sustained a demurrer to a complaint which alleged that as the result of zoning plaintiff's land was reduced in value from $400,000 to $75,000. (*Id.,* at pp. 512, 518; see also *Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141 [142 Cal.Rptr. 46].)

In *Eldridge* v. *City of Palo Alto, supra,* 57 Cal.App.3d 613, it was held that plaintiffs, who had alleged that they were denied *any substantial or reasonable use* of their property as a result of an ordinance rezoning such property "permanent open space and conservation lands," had stated a cause of action for inverse condemnation sufficient to withstand demurrer. (*Id.,* at pp. 617-624.) Appellants contend that because their complaint alleges that the rezoning "prohibits any and all beneficial and reasonable use" of their land, it was error to sustain the demurrer under *Eldridge.* Such a conclusion is not compelled.

We do not believe that *Eldridge* can be read to stand for the proposition that plaintiffs' mere allegation that he has been deprived of all "reasonable or beneficial use" of his property as the result of downzoning is, in itself, sufficient to maintain a cause of action for inverse condemnation.

In *Eldridge,* the zoning ordinance permitted plaintiffs to build 10-acre homesites, which ostensibly amounted to no more than a noncompensable "diminution of market value." (*HFH, Ltd., supra,* 15 Cal.3d at p. 518.) It was clear from the record, however, that the City of Palo Alto was attempting to use the method of "open space" zoning as a means of preserving and maintaining the land for *public purposes* while circumventing the constitutional requirement of condemnation proceedings.

The City Council of Palo Alto, in *Eldridge,* sought alternative ways to achieve an "open space" objective in the surrounding foothills. It amended its general plan so as to designate the uses for the area as " 'open space, conservation and/or parks.' " (57 Cal.App.3d at p. 622.) It thereupon initiated studies which explored methods of achieving this objective " 'other than by acquisition.' " (*Id.*) The ordinance states that its purpose is to " 'protect and preserve [such] open space land' " for, among other things, " 'public recreation' " purposes. (*Id.,* at p. 624.) Among the issues of fact which the court in *Eldridge* held remained to be decided, were whether plaintiffs' parcels were salable at all in view of the fact that the same areas designated as homesites were also designated by the ordinances for "open space" use, including use for public park and recreation purposes, public paths and trails through their property, and "wildlife habitat." (*Id.,* at p. 628.) *Eldridge* thus falls squarely within the line of cases holding that public entities may not use their zoning power as a subterfuge to take land for public purposes without the payment of just compensation. (See *Sneed* v. *County of Riverside, supra,* 218 Cal.App.2d 205, 207; *Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845, 854 [77 Cal.Rptr. 391]; *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 462 [327 P.2d 10].)

In the present case, there are no factual allegations in the complaint demonstrating that the zoning ordinance in question was a property-taking device rather than a regulation of the use of land. Rather, appellants' complaint is similar to the one in *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600 [55 Cal.Rptr. 710] (cited with approval by the Supreme Court in *HFH, Ltd.*), where the court stated: "On the

question of a taking of their property for public purposes, Morse and Seal have failed to set out facts in their complaint to show that the ordinance was a property-taking device rather than a regulation of the use of land. They have sought damages of $1,066,000 for the rezoning of the general area in which they own land, but have pleaded no activity by the county or its agents from which a taking of their property for public use can be inferred. Absent any showing to the contrary, we are entitled to presume that the decision of the county to preserve the agricultural nature of the area and to deny an intensification of habitation near the airport was a reasonable exercise of the zoning power designed to prevent urban sprawl and to forestall the development of residential zones in areas of the county susceptible to excessive noise or above-average hazards." (*Id.,* at p. 603.) Similarly, in *Pinheiro* v. *County of Marin* (1976) 60 Cal.App.3d 323 [131 Cal.Rptr. 633], the court upheld an order sustaining a demurrer to an inverse condemnation complaint, noting: ". . . although appellants allege that the zoning constitutes 'acquisition for public use' they present no allegations of facts indicating either acquisition *or* public use. They 'have failed to set out facts in their complaint to show that the ordinance was a property-taking device rather than a regulation of the use of land.' " (*Id.,* at p. 328, italics in original.)

As to the allegation of no reasonable or beneficial use, it can be readily seen that the subject ordinance on its face permits beneficial use, namely a "one-family dwelling" of the owner, employee or lessee "upon which the use or permitted use is carried on."[2] Their allegation that the rezoning "in effect requires [appellants] to provide for open space for the benefit of the public as an agricultural preserve at [appellants'] sole cost and expense. . ." is a mere conclusion totally unsupported by any factual allegations. It should be also noted that the ordinance in question simply reinstated the agricultural classification which had existed prior to 1969, and that the Santa Cruz County Board of Supervisors has since amended section 13.04.205.28 to permit single-family dwelling use regardless of any concurrent agricultural use of the property. Thus, it is plain that appellants' real grievance is the diminution in property values resulting from a reclassification of the land from commercial to agricultural.

---

[2]In ruling on a demurrer, the trial court may properly treat relevant material subject to judicial notice as having been pleaded. (*Eldridge* v. *City of Palo Alto, supra,* 57 Cal.App.3d at p. 621.) Such matters include resolutions, reports, and other official acts of the county. (*Id.*; see Evid. Code, § 452.)

In light of the foregoing, appellants have failed to state a cause of action under *Eldridge* v. *City of Palo Alto, supra.* The allegations of the complaint coupled with the official acts of which judicial notice may be taken compel the conclusion that the County has not zoned the subject properties as a method of using land for public purposes without paying just compensation, nor has it deprived appellants of all reasonable and beneficial use thereof.

It is finally urged that the trial court's award to the County of the cost of preparing the administrative record in this case should be reversed. Appellants argue that since they objected to the request to take judicial notice of the record and the trial court subsequently ruled that the record could not be admitted at the hearing on the demurrer, the cost was unnecessarily incurred.

Appellants' contention might have merit except for the fact that the order to prepare the administrative record was obtained ex parte by appellants themselves. The signed order directs that the administrative record be prepared "at [appellants'] expense." After the County's demurrer was filed, it moved that the court take judicial notice of the administrative record. The motion was opposed by appellants, not on grounds of relevancy, but on the basis that the record as prepared was incomplete. Appellants never withdrew their request to have the record prepared. The allowance of costs under Code of Civil Procedure section 1033 lies within the sound discretion of the trial court. (*Puppo* v. *Larosa* (1924) 194 Cal. 721, 723 [230 P. 440].) In view of the fact that the administrative record was ordered prepared at the behest of appellants and at their own expense, the trial court did not abuse its discretion in allowing this item as costs to the County as the prevailing party.

The judgment and order denying motion to tax costs are affirmed.

Caldecott, P. J., and Christian, J., concurred.