**George S. GOLEMIS, Plaintiff,**

v.

**Patrick G. KIRBY, in his capacity as Mayor of the City of Newport; John E. Connors, Jr., in his capacity as City Manager and Director of the Department of Public Safety of the City of Newport; Paul W. Gagne, in his capacity as Fire Chief of the City of Newport; and John C. Beebe, III, in his capacity as Chief of Police of the City of Newport, Defendants.**

**Civ. A. No. 85–0404–S.**

United States District Court,
D. Rhode Island.

Dec. 12, 1985.

Edwards & Angell, William R. Landry, Joseph V. Cavanagh, Jr., Providence, R.I., for plaintiff.

Turner C. Scott, City Solicitor, Newport, R.I., Carroll, Kelly & Murphy, C. Russell Bengston, Joanne Glod, Providence, R.I., for defendants.

## OPINION AND ORDER

SELYA, District Judge.

This civil rights suit was brought on July 30, 1984 by George S. Golemis, a businessman and landowner in the city of Newport, Rhode Island, against a bevy of municipal officials, each of whom is sued in his representative capacity. (As the position held by each defendant is accurately set forth in the caption of the case, *see ante*, it would be pleonastic to recite that litany anew.) Inasmuch as the suit challenges municipal action, the court will ofttimes refer to the defendants collectively as "Newport" or simply "the City." Golemis has endeavored to invoke the court's federal question jurisdiction, 28 U.S.C. §§ 1331, 1343(3), as more clearly appears *post*.

The matter has been submitted to the court as a case stated for decision on a stipulated record. Briefs have been filed; oral argument has been waived. The court received the final component of the record (a property appraisal prepared in November of 1985 by Paul J. Hogan, an evaluator jointly selected by the parties) on December 4, 1985, and took the case under advisement on that date. This rescript comprises the court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52(a).

## I. BACKGROUND

Up to a point, the material facts pertinent to this controversy are not in dispute. The plaintiff has for some time owned a piece of land west of Thames Street in Newport, several hundred feet from the waters of Newport Harbor. Newport itself has enjoyed a renaissance over the past decade, and has reclaimed (albeit in a somewhat modified fashion) the glamour and verve of its storied past. Real estate prices have escalated. There is no question but that the plaintiff's parcel, which is familiarly known as "Perry Mill Wharf," has become extremely valuable.

The subject property comprises 17,191 square feet of land zoned "Waterfront Business" and contains three structures which collectively cover about 25% of the tract. The northerly end of the property is paved. This paved area abuts land of Hill-Newport Partners to the north (a site known as the "Newport Bay Club") and runs westerly (in the direction of Thames Street) toward property owned by Francisco and Maria Salas and easterly (in the direction of Newport Harbor) toward a parcel owned by Nicolo Parascondola. Historically, the plaintiff made profitable use of this paved expanse: he operated a commercial parking lot thereon and also allowed the merchants who leased space in his buildings to permit customers to leave vehicles there while shopping.

For some time, a portion of the paved area has been used by Parascondola for ingress and egress to his land. (Parascon-

dola has enjoyed the benefits of a long-standing recorded easement of passage twenty-five feet in width along and across Perry Mill Wharf; the Parascondola easement antedated Golemis's purchase of Perry Mill Wharf.) And in 1982, incident to the settlement of a zoning dispute, Golemis granted an easement and right of way to Hill-Newport Partners, in perpetuity, upon payment of a stipulated annual license fee of $10,000. Hill-Newport is permitted to utilize the easement for passage, for underground utliities, and for parking incident to the operation of the Newport Bay Club. Although Golemis has devoted identifiable segments of the paved area to both the Parascondola and Hill-Newport easements, he alleges that he is under no obligation to do so; to his way of thinking, the easements merely call for rights of access of a defined width and size anywhere along Perry Mill Wharf. Thus, as Golemis sees it, he could have relocated these easements at will.[1] Additionally, he claims to have an absolute right to buy out either or both of the easements, or to negotiate their termination.

The landscape was altered—figuratively and literally—in the Spring of 1984, when the City, as part of an overhaul of its fire safety standards, enacted an ordinance[2] establishing a fire lane twenty-five feet in width along the paved area, covering roughly 4075 square feet of the plaintiff's land. That fire lane runs along the loci of the existing easements used by Parascondola and Hill-Newport, respectively, and encompasses some land previously employed by Golemis for his parking lot operation. The fire lane also encroaches upon the parking privileges theretofore enjoyed by Hill-Newport under its easement. The ordinance, which remains in effect, bans "parking of motor vehicles or otherwise

obstructing" the specified fire lane at any time. But, as the parties agree, it does not affect any existing rights of passage, pedestrian or vehicular.

There is no doubt but that the advent of the ordinance significantly restricted the plaintiff's freedom to use and enjoy his property. See Hogan Appraisal at 11–12. Moreover, the record indicates that the City has, in pursuance of § 1610.14, entered onto Perry Mill Wharf and demarcated the fire lane by painting colored lines across the affected portion of the paved area.

For ease in reference, a diagram of the site, showing the fire lane as a hatch-marked L-shaped strip, is annexed hereto as Appendix A.

## II. SCOPE OF THE LITIGATION

Although the ordinance was adopted by the City as a part of its fire prevention code, the law caused spontaneous combustion on Perry Mill Wharf. Golemis, believing his property rights to have been incinerated by the creation of the fire lane, eschewed the filing of any claim or other remonstrance with the City, or any resort to the state courts. Instead, he brought this suit without further ado. Golemis alleged then, as he does now, that the adoption of the ordinance and the limitations which its enactment superimposed on his use of the subject property constituted a confiscatory taking of private property for public use without due compensation. And this, he asserted, violated the property rights assured to him by the fifth and fourteenth amendments to the federal Constitution. He named as defendants the municipal officials most integrally involved with the enforcement of § 1610.14. Two of the defendants (Gagne and Beebe) are singled out in the pleadings as having been

---

**1.** The question may not be free from doubt. Parascondola has sued Golemis in the state superior court to preserve and protect the integrity of his easement, and that tribunal has granted Parascondola interim relief. The suit is still pending and has not been heard on the merits.

**2.** See § 1610.14 of Chapter 1610 of the Codified Ordinances of the City of Newport, Revision of

1980, as amended (Exhibit F). The parties make repeated reference to the ordinance as having been enacted on April 1, 1984. Exhibit F itself indicates, however, that final passage did not occur until May 23, 1984. Inasmuch as the precise effective date is beside the point, see text post, the court merely notes (but does not attempt definitively to resolve) the anomaly.

instrumental in conjuring up the idea which led to the establishment of the fire lane.[3]

In his original complaint, the plaintiff sought variegated relief, including compensatory and punitive damages. But this court, on a pretrial motion to dismiss, outlawed the damage claims. *Golemis v. Kirby*, C.A. No. 84–0404–S, slip op. at 2–3 (D.R.I. July 16, 1985) (unpublished). *See, e.g., Citadel Corporation v. Puerto Rico Highway Authority*, 695 F.2d 31, 33 (1st Cir.1982) ("damage actions against governmental entities stemming from land use policies [are] not cognizable in a federal court"), *cert. denied*, 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). The amended complaint (upon which Golemis now prays judgment) beseeches the court to grant him essentially equitable redress: a declaration that the ordinance is unconstitutional as applied in this situation, an injunction barring its enforcement, and an award of counsel fees under 42 U.S.C. § 1988.

### III. DISCUSSION

Although it has been essential to limn the facts with care to put this matter into proper perspective, the court need not tarry long in determining the outcome.

It is noteworthy, first, that the plaintiff discerns no abridgement of procedural due process in this situation. He does not question Newport's generic authority to classify and regulate land within its borders; he does not assert that fire safety is an illegitimate municipal concern in general or a spurious one in connection with Perry Mill Wharf; he does not claim that the City was powerless to establish fire lanes in furtherance of this interest. Indeed, given the broad sweep of a municipality's police powers under Rhode Island law, *e.g., Town of Glocester v. Olivo's Mobile Homes, Inc.*, 111 R.I. 120, 300 A.2d 465, 468 (1973), any such challenge would be jejune. In this instance, Golemis does not contend that the City failed to observe the necessary formal-

ities in passing the ordinance or that the formulation of the particular fire lane over Perry Mill Wharf represented an aberrant departure from some established state or local policy or procedure.

Rather, Golemis's jeremiad addresses itself exclusively to concerns anent the essence of due process: governmental expropriation of private property without payment. In his view, the ordinance runs afoul of the Constitution because, though it confers a communal benefit (*i.e.*, enhanced fire protection), its burden has impermissibly been assigned to Golemis and Golemis alone. So, the alleged constitutional infirmity is not procedural, but substantive: § 1610.14 cannot pass constitutional muster, the plaintiff thunders, for the reason that it has worked a de facto "taking" of property without any concomitant compensation. In the words of Justice Holmes,

[A] strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

This court acknowledges the validity of Golemis's underlying thesis: intrusive governmental regulation can sometime "go[] too far," *Pennsylvania Coal Co.*, 260 U.S. at 415, 43 S.Ct. at 160, and can, in the process, become a "taking." *E.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 2874–75, 81 L.Ed.2d 815 (1984); *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The plaintiff overlooks, however, the special position and responsibility of the federal courts. The several states have unique interests and responsibilities vis-a-vis land use within their respective borders; such matters are widely regarded to be of peculiarly local con-

---

**3.** The amended complaint makes the bold allegation that the four defendants "conspired to effect [the creation of the fire lane]." Yet, there is nothing in the stipulated record which suggests that this assertion is more than mere buzznacking.

cern. *See Cloutier v. Town of Epping,* 714 F.2d 1184, 1191 (1st Cir.1983); *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524, 1526–28 (1st Cir.1983); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 831–34 (1st Cir.1982). As a result, the state has front-line responsibility to police county and municipal ordinances so as to guard against the taking of property interests without recompense in a constitutionally offensive manner. And, the states have not hesitated to act in appropriate cases. *E.g., Annicelli v. Town of South Kingstown,* 463 A.2d 133, 139–41 (R.I. 1983); *Sneed v. County of Riverside,* 218 Cal.App.2d 205, 212, 32 Cal.Rptr. 318 (1968); *State. v. Stahlman,* 81 W.Va. 335, 94 S.E. 497, 499 (1917) [4].

The federal courts possess a more removed oversight in such circumstances. To be sure, even when land use is at issue, a federal court need not stand entirely aside; if a regulation which impinges upon real estate sinks sufficiently low that it becomes "so oppressive or arbitrary that it crosses the wavering line separating a valid exercise of the police power from an exercise of the eminent domain power," *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33, 35 (1st Cir.1980), then in such a benighted event a district court may render "a declaration of the invalidity of the purported exercise of the police power." *Id.* at 36. But, the timing of any such intervention is a delicate matter. So long as a state provides meaningful legal remedies for such instances of inverse condemnation, the state must be given first crack at keeping its own house in order. The fifth and fourteenth amendments, severally or in the ensemble, do not permit the federal nose to intrude into the state's tent unless and until the landowner has unsuccessfully travelled the route afforded by the state in a good faith effort to obtain just compensation.

Such deference to the state's paramount interests (given the existence of a reasonable remedial scheme on the state level) is, of course, consistent with the prudential precept that "the federal courts [should] eschew the decision of cases on constitutional grounds unless and until all other available avenues of resolution" have been fully explored. *Aggarwal v. Ponce School of Medicine,* 745 F.2d 723, 726 (1st Cir. 1984). As a result, claims against state and local governments under the Just Compensation Clause are not ripe for federal review until the (putatively) aggrieved party has exhausted the procedures which the state affords for obtaining recompense for the alleged confiscation. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* —— U.S. ——, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause unless it has used the procedure and has been denied just compensation"); *Four Seasons Apartment v. City of Mayfield Heights, Ohio,* 775 F.2d 150, 151–52 (6th Cir.1985) (same); *cf. Ruckelshaus v. Monsanto Co.,* 104 S.Ct. at 2880–82 ("taking" claims against the federal government premature until the claimant first seeks the prophylaxis of the Tucker Act, 28 U.S.C. § 1491).

It makes no difference that Golemis couches his imprecation partially in terms of substantive due process; the Court has plainly signalled that the same considerations of ripeness must necessarily flaw any argument under the Due Process Clause in the circumstances of this case. *See Williamson County,* 105 S.Ct. at 3122–24. *See also Four Seasons Apartment,* 775 F.2d at 151–52. There can be no serious question but that the rule of *Williamson County* applies full bore to the case at bar.

---

**4.** One exception to this general rule of state priority exists when the federal government is itself the moving force in the "taking." *See, e.g., United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946) (overflights which destroyed utility of the plaintiff's chicken farm constituted a "taking"); *Portsmouth Co. v. United States,* 260 U.S. 327, 330, 43 S.Ct. 135, 137, 67 L.Ed. 287 (1922) (same; military gunfire over plaintiff's land). Consistent with the fundamental principles of federalism, the rationale for this exception is plain.

So long as the state offers a suitable prospect for recourse in respect to an alleged "taking," a landowner must mine that quarry before panning for gold in the federal hills.[5]

Rhode Island affords a panoply of perfectly adequate remedies to one whose property has impermissibly been taken. The state constitution effectively mirrors the Just Compensation Clause contained in its federal counterpart. *Compare* U.S. Const. amend. V *with* R.I. Constitution, art. 1, § 16. The state's statutes are in harmony with its constitutional burdens. *See, e.g.,* R.I. Gen. Laws § 37-6-18 (assessment of damages by jury available for governmental "taking"). The Rhode Island courts have expressly recognized the viability of a cause of action "in inverse condemnation [to] permit[] recovery against a governmental entity that takes the property in fact without formally exercising the power of eminent domain." *Annicelli,* 463 A.2d at 139. *See also E & J, Inc. v. Redevelopment Agency of Woonsocket,* 122 R.I. 288, 405 A.2d 1187, 1189 (1979) (same). "This is so even though theactual use [of the property] has not been transferred to the government in the traditional sense of a taking." *Annicelli,* 463 A.2d at 139. Given the ample dimensions of Rhode Island's remedial paradigm, *Williamson County* controls. The plaintiff's imperious attempt to circumvent state procedures cannot be countenanced.

One final issue must be resolved. *Williamson County* involved a suit for money damages, whereas Golemis has limited his claim to declaratory and injunctive relief. *See* text *ante* at Part II. Does this distinction make a difference? Surely, the answer must be in the negative. A close reading of *Williamson County* reveals that the plaintiff there sought injunctive relief in addition to damages. *See Williamson County,* 105 S.Ct. at 3115. Indeed, the Court's analysis vis-a-vis the ripeness issue was inextricably linked to the district court's decision in that case granting injunctive relief. The *Williamson County* Court saw no need to differentiate between the legal and equitable claims; it simply held that all were premature. More importantly, the Court's ripeness analysis would be completely neutered if its holding were applied to damage claims alone. It would not serve the interests of either federal/state comity or sound jurisprudence to encourage hasty rushes to (unnecessary) constitutional judgments by engrafting such a mischievous exception upon the *Williamson County* rule. And, such paralogism would disserve common sense as well. Analytically, ripeness concerns apply to the prosecution of actions per se, not to a party's choice of remedy. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Blue Cross of Rhode Island v. Cannon,* 589 F.Supp. 1483, 1490 (D.R.I.1984). The distinction, therefore, is a periphrastic strawman, as easily dismissed as raised.

## IV. CONCLUSION

Notwithstanding Golemis's alarming diagnosis of the maladies which the ordi-

---

**5.** The *Williamson County* Court noted an alternate basis for its holding that the requisite degree of maturescence was lacking: the landowner "has not yet obtained a final decision regarding how it will be allowed to develop its property." *Id.* at 3119. *See also Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981); *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141. That ground is equally applicable in this case. Although Golemis struts and frets about how his visions of future development have been clouded by Newport's passage of the ordinance, *e.g.,* Plaintiff's Brief at 3-4 ("The enormous newly-imposed (and *permanent*) dead space robs the entire parcel of a substantial proportion of its development potential and value in this boom-

ing—but exceedingly cramped—section of Newport.") (emphasis original), he nowhere alleges that he has presented a development plan to the municipality which has been squelched, or that he has applied fora variance from the ordinance in question. *See* R.I.Gen.Laws § 23-28.3-5. In the utter absence of such efforts, the plaintiff's suit is little more than an ill-considered invitation for this court to embark on a premature and perilous journey through the essentially uncharted waters of a sea that may never exist. The court declines the invitation. "Indeed, to look the other way would be 'gratuitously to hold a farthing candle to the sun'." *Aggarwal,* 745 F.2d at 726, quoting *Lopez v. Bulova Watch Co.,* 582 F.Supp. 755, 762 (D.R.I.1984).

nance has caused, he has come to the wrong place for an immediate antidote. The plaintiff's present effort to use a federal venue as an emetic against the municipal action which (in his view) has tainted the eupepsia of his property rights cannot be swallowed. In the first instance, he must look to the Rhode Island courts for a cure. His claims are, at best, premature.

The plaintiff's complaint must be, and it hereby is, denied and dismissed, for the reasons stated. This dismissal shall operate without prejudice to the plaintiff's pursuit of his state remedies[6] and without prejudice to the refiling of an action in this court if, as, and when state restoratives have been exhausted and a climacteric has been achieved.

*It is so ordered.*

6. The court need not reach—and expresses no opinion upon—the question of whether Newport's enactment of § 1610.14, as applied to Perry Mill Wharf, can be seen as going so far as to require the payment of just compensation or money damages.